# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 15-CV-4975

KRISTINE MCMAHON-PITTS,

Plaintiff,

VERSUS

RICHARD SOKOLOFF,

Defendant.

**MEMORANDUM AND ORDER**
March 15, 2017

JOSEPH F. BIANCO, District Judge:

On August 25, 2015, plaintiff Kristine McMahon-Pitts brought this action alleging that defendant Richard Sokoloff had attempted collection on a paid debt in violation of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, e(2), e(10), and used an auto dialer in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b). (ECF No. 1.) Plaintiff dropped her TCPA claim against defendant on April 15, 2016, after receiving discovery proving that defendant did not use an auto dialer. Subsequently, on April 25, 2016, defendant presented a Rule 68 offer of judgment that provided plaintiff the maximum statutory damages under the FDCPA, as well as reasonable attorneys' fees and costs, as agreed to by the parties or decided by the Court, up until the date of service of the offer. Plaintiff accepted the offer.

Presently before the Court is plaintiff's motion for attorneys' fees and costs. (ECF No. 30.) For the reasons set forth below, the Court awards plaintiff $12,964.50 in attorneys' fees and $786.51 in costs.

### I. BACKGROUND

In December 2014, plaintiff received a letter from defendant alleging that a debt was due to 24/7 Emergency Care P.C. for $392.58. (Civil Complaint and Jury Trial Demand ("Compl."), ECF No. 1, at ¶ 7.) On January 6, 2015, plaintiff mailed a check covering the full balance, which was subsequently cashed. (*Id.* ¶ 9.) Afterwards, defendant called plaintiff on her cell phone once on January 14, three times on January 21, five times on February 23, and once on March 14. (*Id.* ¶¶ 10–13.) Plaintiff did not answer all of these calls, but when she did, she told defendant to stop calling her. (*Id.* ¶¶ 10–13.)

Plaintiff filed the complaint in this action on August 25, 2015, alleging violations of the FDCPA and TCPA. (ECF No. 1.) She initially sought $16,500 in connection with the TCPA violation and $1,000, the statutory maximum, in connection with the FDCPA violation. (ECF No. 32-1.) Plaintiff served defendant on September 2, 2015 (ECF No. 6), and defendant answered on October 1, 2015 (ECF No. 10). At the initial conference on November 24, 2015, Magistrate Judge Brown set January 24, 2016 as the completion date for Phase I Discovery. (ECF No. 16.)

On November 30, 2015, plaintiff sent interrogatories and requests for production seeking information on defendant's phone system. Defendant did not provide this information by the Phase I deadline, stating that it was irrelevant. (*See* ECF No. 30-2.) Plaintiff sent letters again requesting this information on February 4 and 22, 2016. (ECF Nos. 30-2, 30-3.) Separately, on February 23, 2016, in response to defendant's request, plaintiff tendered a settlement demand reflecting an amount inclusive of both claims. Defendant did not agree to this demand.

On February 29, defense counsel Robert Arleo notified plaintiff's counsel, Daniel Zemel and Matthew Sheffield, that defendant purchased his office telephones from RingCentral. (Def.'s Mem. Opp'n to Pl.'s Mot. for Attorneys' Fees and Costs ("Def.'s Br."), ECF No. 32, at 4.) According to defendant, plaintiff's counsel responded in an email stating, "Telling me where your client purchases it's [sic] phone does not tell me the system." (*Id.*)[1] The next day, Arleo emailed Zemel and Sheffield to provide them with the model numbers for the phone systems used by defendant. (ECF No. 33-2.) Zemel relayed that information to his expert, Jeff Hansen, who replied, "Those two are only the telephone itself . . . we would need them to tell us what phone system and or dialer is used." (ECF No. 33-3 (ellipsis in original).)

On April 11, 2016, Zemel and Arleo attended a status conference with Judge Brown, which ultimately turned into a settlement conference. (*See* ECF No. 23.) The parties left with a settlement in principle, but on April 14, defendant sent a letter to Judge Brown notifying him that defendant did "not consent to the settlement proposal which was effected . . . at the status conference." (ECF No. 22.) That same day, Arleo provided Zemel with the phone user guide for the phone systems that defendant used. (ECF No. 33-4.) Zemel gave the user guide to his expert, who then confirmed that defendant did not use an auto dialer. (ECF No. 33-5.) Zemel sent Arleo an email the next day acknowledging receipt of the user guide, reporting on the expert's conclusion, and stating, "I will no longer be pursuing my TCPA claims." (ECF No. 30-4, at ¶ 6.) The parties subsequently filed a stipulation of voluntary dismissal as to the TCPA claim on April 23, 2016. (ECF No. 24), which this Court approved shortly thereafter (ECF No. 25).

Meanwhile, on April 25, 2016, defendant provided plaintiff with a Rule 68 offer of judgment, which plaintiff accepted. (ECF No. 27.) Under the terms of the offer, judgment was entered against defendant for $1,000, the maximum amount permitted under the FDCPA. (*Id.*) The judgment was also to "include an additional amount for Plaintiff's reasonable costs and attorneys' fees accrued through the date of service of this Offer

---

[1] Defendant does not attach this email as an exhibit, but plaintiff does not explicitly contest this factual assertion, so the Court accepts it as true.

of Judgment [April 25, 2016], either: 1) as agreed to by counsel for the parties; or 2) in the event counsel cannot agree, as determined by the Court upon application by Plaintiff's counsel." (*Id.*) The Clerk of the Court was directed to enter judgment accordingly and close the case on May 10, 2016. (*Id.*)

The parties were unable to reach an agreement on attorneys' fees, and plaintiff moved to reopen the case on May 19, 2016. (ECF No. 28.) This Court granted the motion the next day (ECF No. 29), and plaintiff filed the present motion for attorneys' fees on May 29, 2016 (ECF No. 30). Defendant filed an opposition on June 22 (ECF No. 32), and plaintiff replied on June 28 (ECF No. 33). Defendant then filed a request to submit a sur-reply, in which he asked for an opportunity to disclose the settlement amount plaintiff demanded in February. (ECF No. 34.) He also requested leave to depose plaintiff's expert. (*Id.*) Plaintiff opposed this request. (ECF No. 35.) Oral argument was held on September 7, 2016. Afterward, in response to this Court's request for supplemental briefing on the fees awarded in FDCPA cases in the Second Circuit, the parties submitted supplemental letters disclosing such cases. (ECF Nos. 37–38.) In the course of doing so, defendant also raised new arguments (ECF No. 38), and plaintiff responded to those arguments in a separate letter (ECF No. 39). Defendant again requested permission to depose plaintiff's expert (ECF Nos. 40–41), which plaintiff opposed (ECF No. 42). The Court has fully considered the parties submissions.

## II. ATTORNEYS' FEES

Normally in our legal system, "each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). Under the FDCPA, however, "[a] consumer who brings a successful FDCPA lawsuit can recover 'the costs of the action, together with a reasonable attorney's fee as determined by the court.'" *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (quoting 15 U.S.C. § 1692k(a)(3)); *see also Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 209–10 (E.D.N.Y. 2009).

Generally, to determine reasonable attorneys' fees, a court must calculate a "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). "Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue*, 559 U.S. at 550). Correspondingly, "'the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee' . . . ." *Perdue*, 559 U.S. at 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551. "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012) (citing *Hensley*, 461 U.S. at 433).

Plaintiff requests an award of attorneys' fees in the amount of $14,635.50. Defendant argues that this is excessive and merits a reduction. For the following reasons, the

Court, in its discretion, awards plaintiff $12,964.50 in attorneys' fees.

### A. Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. The Second Circuit's "'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). The Second Circuit also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989). *See Arbor Hill*, 522 F.3d at 190. The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (quoting *Johnson*, 488 F.2d at 717–19). Finally, a district court should also consider "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and "that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 190. "The burden rests with the prevailing party to justify the reasonableness of the requested rate," and a plaintiff's attorney "should establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." *Hugee*, 852 F. Supp. 2d at 298.

"Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) (citations omitted); *see also D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK)(WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015) ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals."). Of course, in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, "the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012).

Plaintiff requests an hourly rate of $170 for Daniel Zemel, the lead attorney on the case, $200 for attorney Matthew Sheffield, $230 for attorneys David Force and Allison Polesky, and $90 for paralegals India Johnston and Aleksandra Simonoska. Defendant does not challenge these rates. Zemel has

been admitted in New York since 2014 and has practiced for two years in consumer law. (Pl.'s Mem. Supp. of Attorney's Fees and Costs ("Pl.'s Br."), ECF No. 30-1, at 11.) Sheffield, admitted since 2012, has practiced in the field of consumer law for three years. (*Id.*) Force graduated law school in 2010, clerked for Judge Graziano in Passaic County Superior Court, and has been practicing consumer law protecting creditor's rights and providing consumer protection since that time. (*Id.*) Polesky, who graduated in 2008, also has extensive experience in consumer law. (*Id.*)

The rates plaintiff requests all fall within the applicable range for attorneys of similar experience in the Eastern District of New York. That is, Zemel's $170 rate and Sheffield's $200 rate fall between the $100 and $200 range for "junior associates," the $230 rate for Force and Polesky falls between the $200 and $325 rate for "senior associates," and the $90 rate for Johnston and Simonoska falls between the $70 and $100 range for paralegals. *See Sass*, 6 F. Supp. 3d at 261; *D'Annunzio*, 2015 WL 5308094, at *4. Therefore, given the attorneys' level of experience and the Court's consideration of the other *Johnson* factors, the Court finds these rates reasonable.

B. Reasonable Hours

Plaintiff documents 82.4 total hours billed in this case, including, by the Court's calculation, 67.7 for Zemel, 10.1 for Sheffield, 0.8 for Force, 2.5 for Polesky, and 1.3 for paralegals. *See* Aff. of Time and Expense by Daniel Zemel ("Zemel Aff."), ECF No. 30-5, at 1–13.) [2] Defendant asserts that the Court should exclude all hours billed (and costs incurred) after February 23, 2016—the date plaintiff tendered a settlement demand that included the TCPA claim—because defendant was prepared to settle the FDCPA claim at that time, and plaintiff should have known that the TCPA claim was baseless by then. (Def.'s Br. at 3.) In addition, defendant argues that fees for the entire period should be reduced because plaintiff only recovered $1,000 when she initially sought $17,500.[3] (*Id.* at 1, 3, 6–7.)

1. Hours Billed After February 23, 2016

Defendant argues first that this Court should exclude from its calculation of the lodestar figure all hours billed after February 23, 2016—the day plaintiff submitted a settlement demand reflecting both the TCPA claim and the FDCPA claim—on the grounds that, through the exercise of reasonable diligence, plaintiff would have discovered that the TCPA claim was baseless by that date.

---

[2] Plaintiff reports that the total hours billed was 216 hours, but this appears to be either a typographical or calculation error. Applying this number to Zemel's $170 hourly fee, for instance, would produce a lodestar figure of $36,720. According to the Court's calculation, by contrast, when the relevant hours for each attorney is multiplied by his or her hourly rate, the lodestar figure (without reductions) amounts to $14,405, much closer to the requested $14,635.50 in fees. In addition, the Zemel Affidavit reports that only $14,439 in fees were incurred, and the $34 difference between this number and the Court's calculation appears to have resulted from plaintiff's accidental billing of two entries (each for 0.1 hours by Zemel) marked "Not Billed." (*See* Zemel Aff. at 7.) It is unclear why plaintiff formally requests roughly $200 more than the amount reflected in the Zemel Affidavit, but this relatively small difference proves immaterial to this Court's analysis.

[3] Defendant also requests permission to file a sur-reply to disclose the settlement amount plaintiff initially demanded on February 23, 2016. This amount, however, is immaterial to this Court's analysis. Defendant's only assertion regarding this demand relevant to this Court's analysis—accepted as true for purposes of this motion—is that the amount demanded reflected both the FDCPA and TCPA claims.

5

(Def.'s Br. at 2–3.) Defendant asserts that, had plaintiff simply demanded the maximum statutory amount for the FDCPA claim at that time, defendant would have settled the matter. (*Id.* at 3.) The Court declines to exclude this period from its calculation.

As a threshold matter, the Court notes that defendant did not provide *any* information about his phone systems to plaintiff until February 29, 2016 when he informed plaintiff that he bought phones from RingCentral. Without this information, plaintiff's counsel had no way of determining whether defendant used an auto dialer, and it was not unreasonable for plaintiff to conclude that he did so based on the sheer number of calls she received after paying the debt, especially given the number of times she told them the debt was paid and asked them to stop calling her.[4] Thus, at the very least, the attorneys' fees calculation should include the reasonable hours billed prior to February 29, 2016.

Furthermore, even after that date, the Court disagrees with defendant's argument that plaintiff's counsel did not exercise reasonable diligence in investigating the substance of the TCPA claim based on the information provided. Instead, the Court concludes that it was reasonable for plaintiff's counsel to rely on the expert's statement that he needed more information than the name of defendant's phone company and the model number to determine whether defendant used an autodialer. *See Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993) ("As long as reliance is reasonable under the circumstances, the court must allow parties and their attorneys to rely on their experts without fear of punishment for any errors in judgment made by the expert."). Defendant now asserts that, once he gave plaintiff the expert's name, the expert only needed to call RingCentral or consult its website to discover whether it sold auto dialers, but, by defendant's own admission, Zemel promptly informed defense counsel that "[t]elling me where your client purchases it's [sic] phone does not tell me the system. (*See* Def.'s Br. at 4.) Even if all the expert needed to do was make a phone call, moreover, plaintiff's *attorney* was under no obligation to conduct this independent investigation after relaying the information to the expert. *See Coffey*, 1 F.3d at 1104. In addition, the day after defendant fully complied with plaintiff's discovery request by providing the phone manual, plaintiff dropped the TCPA claim, which indicates that counsel had a good faith belief that those claims were valid prior to receipt of the phone manual.[5]

---

[4] Defendant argues that plaintiff should have recognized that the calls were not autodialed because there is normally a delay before the recipient of such a call is connected to a live representative, but no such delay was present here. (*Id.*) To support this argument, he cites *Lundstedt v. Deutsche Bank Nat'l Trust Co.*, No. 3:13-CV-001423 (JAM), 2016 WL 3101999, at *5 (D. Conn. June 2, 2016), where a *pro se* litigant testified that "[he] could tell [a call was made by] a computer because [he] would be waiting and waiting and waiting . . . . and then somebody would come on." *Id. Lundstedt*, however, simply suggests that the *presence* of a delay might indicate that a call *was* autodialed. It does not follow from this that the *absence* of a delay indicates that a call was *not* autodialed. As noted above, given the volume and persistence of the calls plaintiff received even after repeatedly notifying defendant that she had paid the debt, it was reasonable for her to believe the calls were autodialed.

[5] For these reasons, defendant's multiple requests to depose the expert are denied. (*See* ECF Nos. 34, 40–41.) Even if the expert could have discovered that defendant did not use an auto dialer based on the information provided in February 2016 (and would admit to that in a deposition), plaintiff's counsel was not unreasonable to rely on the expert's statement to the contrary and, consequently, to continue his good faith TCPA claim after February 29. *See Coffey*, 1 F.3d at 1104. Therefore, the Court declines, in its discretion, to order a deposition. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (the amount of

Finally, it is worth noting that defense counsel bears much of the blame for the elongation of the litigation. Plaintiff requested information on defendant's phone systems to determine the veracity of her TCPA claim as early as November 30, 2015, but defendant waited until February 29, 2016—over a month after the Phase I Discovery deadline expired—to provide *any* such information. In addition, nothing prevented defendant from timely providing the phone manual that ultimately enabled plaintiff's expert to conclude that defendant did not use an auto dialer.

In light of Zemel's good faith belief in the TCPA claim, his reasonable reliance on the expert's statement, and defense counsel's failure to provide adequate, timely discovery, it was not unreasonable for Mr. Zemel to persist with the TCPA claim after February 23.

In any event, even assuming Zemel had discovered that the TCPA claim lacked merit in February 2016 and promptly dismissed it, the record belies defendant's contention that he would have settled the case in February, as defendant contested the FDCPA claim as late as April 2016. First, at the April 11 conference with Judge Brown, defense counsel disputed the number of calls made and the purpose of the call, arguing that defendant "only made one follow up phone call" that was "just a confirmation call." (Tr. of Proceedings Held on 4/11/2016, ECF No. 23, at 4.) Consequently, counsel asserted that "after [plaintiff] gave the check[,] there wasn't any attempt to collect the debt" in violation of the FDCPA. (*Id.*) In addition, on April 14, 2016, defense counsel submitted a letter to the Magistrate Judge revoking his consent to the settlement produced at the April 11 conference in which he also argued that his client did not improperly seek to collect on a paid debt:

> My client reminded me that the Plaintiff signed a contract at the time the medical services, which are the subject of my client's collection attempts, were rendered. The contract expressly requires the Plaintiff to pay a fee of 33.3% of any amount owed, which represents attorneys fees [sic], if she defaulted in regard to paying for the medical services rendered. The Plaintiff defaulted, the account was forwarded to my client, an initial letter was sent by my client to the Plaintiff in early December 2014, and the Plaintiff sent a check dated January 6, 2015 to the creditor for the principle amount of the debt only. Thus, my client had every right to seek payment of the contractually agreed upon collection fees from the Plaintiff.

(Def.'s Letter Dated 4/14/2016, ECF No. 22.) In other words, defense counsel argued that plaintiff had not fully paid the debt, and defendant thus could still lawfully seek to collect the outstanding balance. Based on this argument and the argument at the April 11 conference, the record is clear that defendant continued to contest the claim he now asserts he would have settled in February until April 14, 2016.

As such, given Zemel's reasonableness in pursuing the TCPA claim until April, as well as defense counsel's failure to provide adequate discovery in a timely manner and continued contestation of the FDCPA claim past February, the Court declines to exclude the hours billed after February 23, 2016.

---

attorneys' fees and costs is "fixed in the discretion of the court").

7

2. Degree of Success

Defendant next argues that the hours should be reduced because the amount ultimately recovered ($1,000 on the FDCPA claim alone) represents a fraction of the total recovery sought (over $17,000, including the dismissed TCPA claim). As set forth below, the Court concludes that there is substantial overlap between the FDCPA and TCPA claim, and, thus, a substantial reduction is not warranted. Nevertheless, a more limited reduction of 10% is appropriate to account for time spent exclusively on the unsuccessful TCPA claim.

The Supreme Court has recognized that "plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley*, 461 U.S. at 440; *see also Stanczyk v. City of New York*, 752 F.3d 273, 284–85 (2d Cir. 2014) (citing *Hensley*, 461 U.S. at 434–35). In *Hensley*, the Court held:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

461 U.S. at 440; *see also Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004).

The Supreme Court further explained that, in cases where a plaintiff pursues "distinctly different claims for relief that are based on different facts and legal theories" (even though brought against the same defendants), "counsel's work on one claim will be unrelated to his work on another claim" and thus, "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 434–35. However, "[a] plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof." *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997); *see also Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 194 (2d Cir. 2000) ("The district court therefore has the discretion to award fees for the entire litigation where the claims are inextricably intertwined and involve a common core of facts or are based on related legal theories." (citation omitted)).

Courts in this Circuit have applied these rules to reduce fees where a party voluntarily dismisses one or more claims. *See, e.g.*, *Medina v. Donaldson*, No. 10 CIV. 5922 (VMS), 2015 WL 77430, at *16 (E.D.N.Y. Jan. 6, 2015). This is particularly appropriate where "the tasks performed by plaintiff's counsel were unjustified," such as filing a motion that "counsel themselves recognized as futile." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) (citing *Cooper v. Sunshine Recoveries, Inc.*, No. 00 Civ. 8898, 2001 WL 740765, at *3 (S.D.N.Y. June 27, 2001)). In *Green*, for example, the Second Circuit affirmed a district court's 20% reduction where a "plaintiff failed to submit any material evidence to support the five voluntarily withdrawn claims during the course of the litigation." 361 F.3d at 100. Conversely, in *Castelluccio v. International Business Machines Corp.*, No. 3:09CV1145 TPS, 2014 WL 3696371, at *4 (D. Conn. July 23, 2014),

a court in this Circuit declined to reduce fees based on dismissed claims where they were "factually interrelated" to claims that succeeded and were "reasonably viable legal theories that counsel had a duty to investigate." *See also Monette v. Cnty. of Nassau*, No. 11-CV-539 (JFB) (AKT), 2016 WL 4145798, at *9 (E.D.N.Y. Aug. 4, 2016) (holding that although "plaintiff's claims for disability discrimination and hostile work environment were rejected by the jury and plaintiff only prevailed on his First Amendment retaliation claim," no reduction in requested fees was warranted on partial success grounds because "the issue of plaintiff's transfer was inextricably intertwined with his retaliation claim"). Furthermore, counsel in *Castelluccio* "timely abandoned" the dismissed claims "when [he] determined they were not meritorious," 2014 WL 3696371, at *4, unlike the lawyer in *Green* who persisted with his claims without offering evidence in support, 361 F.3d at 100.

In the instant case, the Court concludes that the FDCPA and TCPA claims were "inextricably intertwined[,] . . . involve[d] a common core of facts [and were] based on related legal theories." *Kerin*, 218 F.3d at 194; *see also Castelluccio*, 2014 WL 3696371, at *4; *Monette*, 2016 WL 4145798, at *9. Specifically, both claims grew out of the repeated telephone calls defendant made to plaintiff's cellular phone in an effort to collect on a paid debt after she revoked consent to receive the calls. (*See* Compl. ¶¶ 7–18, 25). Thus, although some facts were only material to one claim (*e.g.*, defendant's alleged use of an auto dialer was immaterial to whether he attempted to collect on a paid debt), most of counsel's actions in pursuing this litigation involved the investigation of both claims jointly. For instance, to determine whether the calls violated the FDCPA or the TCPA, counsel needed to collect information about the number, dates, frequency, and content of the calls. Therefore, even if plaintiff had never brought the TCPA claim, counsel would likely have billed only slightly fewer hours than they did here.

Nevertheless, as plaintiff's counsel admitted at oral argument, counsel spent at least some time exclusively on the unsuccessful TCPA claim. For instance, all plaintiff's efforts to obtain information about defendants' phone system were relevant only to the TCPA claim, as were certain, discrete, individual actions too small to be reflected in plaintiff's billing memorandum, such as drafting the TCPA section of the complaint and discussing the TCPA claim with co-counsel, defense counsel, and court personnel. (*See* Pl.'s Reply Supp. Mot. for Attorneys' Fees, ECF No. 33, at 6 (acknowledging that at least some time was spent "solely on determining Defendant's phone system and the viability of Pitts's TCPA claims").) Therefore, the Court concludes that a 10% reduction in hours is appropriate to reflect the time spent on plaintiff's unsuccessful TCPA claim. *See Hensley*, 461 U.S. at 440; *see also Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 524 (2d Cir. 1991) ("[T]he allocation of fees between successful and unsuccessful claims necessarily lies largely in the discretion of the district court.").

\* \* \*

Applying the reduction, hours, and rates outlined above, the Court calculates the lodestar figure to be $12,964.50.[6]

---

[6] The Court calculated this figure as follows: 60.93 hours for Zemel after the reduction at $170 per hour for a total of $10,358.10; 9.09 post-reduction hours for Sheffield at $200 per hour for a total of $1818; 2.25 post-reduction hours for Polesky at $230 per hour for a total of $517.50; 0.72 post-reduction hours for Force at $230 for a total of $165.60; and 1.17 hours for the paralegals at $90 per hour for a total of $105.30.

C. Consistency with Awards in Similar Cases

At oral argument, this Court requested supplemental briefing on the awards typically granted in FDCPA cases. In briefing this issue, defendant argues that the fee award should be reduced in light of *Ferrari v. U.S. Equities Corp.*, 661 F. App'x 47 (2d Cir. 2016) and *Tjartjalis v. Bureau*, No. CV 14-1412, 2016 WL 4223493 (E.D.N.Y. Aug. 9, 2016).

The Court concludes that the lodestar figure of $12,964.50 is consistent with, or lower than, fees awarded in other FDCPA cases in the Second Circuit, and, therefore, no reduction is warranted on this basis. *See, e.g.*, *Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 411 (S.D.N.Y. 2003) (awarding $6,651.50 in fees for 30.7 hours billed after reductions in similar FDCPA case); *Marshall v. Reisman*, No. 11-CV-5764 ARR VVP, 2013 WL 1563335, at *5 (E.D.N.Y. Mar. 25, 2013) (awarding $12,855 for 60.4 hours billed in similar FDCPA case), *report and recommendation adopted,* No. 11-CV-5764 ARR VVP, 2013 WL 1561478 (E.D.N.Y. Apr. 12, 2013); *Tito v. Rubin & Rothman, LLC*, No. 12-CV-3464 JMA, 2014 WL 1092845, at *1 (E.D.N.Y. Mar. 18, 2014) (awarding $22,110.10 for 122 hours billed in more complex FDCPA case); *Jara v. P.N. Fin., Inc.*, No. 10 CIV. 6274 PAE HBP, 2014 WL 4388515, at *6, *10 (S.D.N.Y. Sept. 4, 2014) (awarding $9,032.00 in fees for 40.6 hours billed in successful FDCPA action against a defaulted defendant), *report and recommendation adopted,* No. 10 CIV. 6274 PAE HBP, 2014 WL 5100222 (S.D.N.Y. Oct. 10, 2014). In particular, the Court notes that both *Kapoor* and *Marshall* were fairly straightforward FDCPA cases where the plaintiff accepted an offer of judgment shortly after initiating the lawsuit. *See Kapoor*, 269 F. Supp. 2d at 410 (action commenced in January 2002 and offer of judgment accepted in late February); *Marshall*, 2013 WL 1563335, at *1 (case settled after defendants filed their answers, the parties exchanged initial disclosures and appeared for an initial conference, and the defendant requested a pre-motion conference in anticipation of moving to dismiss). The *Kapoor* award of $6,651.50 (in 2003 dollars) represents over half of the lodestar figure here, but the hours billed in that case (30.7 after reductions) are less than half the hours billed here (74.16 after reductions). *See Kapoor*, 269 F. Supp. 2d at 410. *Marshall* goes even further, as that case involved 12 fewer hours than this one (post-reduction), yet the court awarded almost as much as the amount awarded here. *Marshall*, 2013 WL 1563335, at *1, *5. Finally, in *Jara*, a case where the defendant did not even appear, the court awarded almost 75% of the amount awarded here for roughly *half* the number of hours. *See* 2014 WL 4388515, at *6.

Meanwhile, far from militating in favor of a reduction, the cases defendant cites actually confirm the reasonableness of this Court's award. In *Tjartjalis*, for instance, the court awarded $14,715 for 61.9 hours billed (after reductions), which is *higher* than the amount awarded for more hours here. 2016 WL 4223493, at *3. Defendant argues that $14,715 was justified in *Tjartjalis* because the parties engaged in much more extensive motion practice than the parties did here. The *Tjartjalis* court, however, did not emphasize the substance of the work performed when it calculated the lodestar, as defendant suggests. Instead, it merely followed the lodestar method, which, as noted above, accounts for the *amount* of work performed rather than the type. *See id.* at *3; *see also Hensley*, 461 U.S. at 433 (lodestar figure calculated by multiplying *number* of hours reasonably billed by reasonable hourly rate). The type of work performed in *Tjartjalis* was only relevant to the reasonableness of the hours *on specific tasks*, *see* 2016 WL 4223493, at *3 (reducing hours as excessive for tasks like "preparing

the fee application and reply," "proofreading and revising opposition to motion," and "preparing standard discovery demands"). Defendant, however, does not contest the reasonableness of the hours spent on specific tasks, and, thus, his argument for an across-the-board reduction based on the type of work performed does not follow from *Tjartjalis*.[7]

The award in *Ferrari* also supports the reasonableness of the lodestar amount here. *See* 661 F. App'x 47. There, the district court awarded $12,690 in fees for 50.76 compensable hours, again an award for fewer hours that is almost as high as this Court's award. *Ferrari v. U.S. Equities Corp.*, No. 3:13-CV-00395 (JAM), 2015 WL 6383467, at *3 (D. Conn. Oct. 22, 2015), *aff'd in part, vacated in part,* 661 F. App'x 47 (2d Cir. 2016). Defendant points to language in the Second Circuit's opinion to argue that the award should be reduced to reflect what "a reasonable, real-world client" would have paid an attorney who helps her recover a small amount. 661 F. App'x at 49. The Court employed this language, however, in affirming the district court's reduction of certain hours as unreasonable. *See id.* The Court was not suggesting that small recoveries in FDCPA cases should result in small fee awards, as defendant suggests. On the contrary, the Second Circuit explicitly stated that "it is error to reduce a fee merely because it would be disproportionate to the financial interest at stake in the litigation . . . without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances." *Id.* at 51.

Thus, the cases defendant cites further demonstrate the consistency of the Court's award with other awards in this Circuit. Accordingly, the Court concludes that no reduction is warranted on this basis.

### III. COSTS

"As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.*; *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013) (same). In particular, under Local Civil Rule 54.1, "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for the costs claimed must be attached as exhibits." *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458 (JGK)(DF), 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012) (quoting Local Civ. R. 54.1(a)), *report & recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

Plaintiff requests costs in the amount of $786.51, consisting of a $400 filing fee, a $90 service fee for the website address, a $45 service fee for a new location address, $91.61 in subpoena and witness fees, $120 in service of process fees, and $39.90 in transcript fees. (Zemel Aff. at 14.) She also attached receipts itemizing each of these costs (*see* Exs. A–C to Pl.'s Mot. for Attorneys' Fees and Costs,

---

[7] As noted above, the type of work performed is also relevant to the reasonableness of the attorneys' hourly rates, *see Arbor Hill*, 522 F.3d at 190 ("In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors."), but defendant does not contest the rates requested by plaintiff.

ECF Nos. 30-6–30-8), fulling the documentation requirement, *see Pennacchio*, 2011 WL 2945825, at *2; *Roberts*, 2012 WL 5431034, at *9.

Defendant does not specifically challenge these costs. Instead, he argues for a reduction in costs consistent with the reductions he seeks for attorneys' fees. Specifically, he argues that the Court should not award costs incurred after February 23, 2016, or should reduce costs to reflect plaintiff's limited recovery. The Court declines to exclude costs incurred after February 23, 2016 for the same reasons it declines to exclude attorneys' fees incurred after that date. As for plaintiff's limited recovery, the Court concludes that the 10% reduction in hours adequately accounts for the time spent exclusively on the unsuccessful TCPA claim, and defendant has not identified—and the Court does not discern—any specific costs that plaintiff incurred exclusively because of that claim. The Court, therefore, concludes that no reduction in costs is warranted on this basis. Consequently, plaintiff is awarded $786.51 in costs.

### III. CONCLUSION

For the foregoing reasons, the Court awards plaintiff $12,964.50 in attorneys' fees and $786.51 in costs. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 15, 2017
      Central Islip, NY

\* \* \*

Plaintiff is represented by Daniel Zemel, Matthew Sheffield, Allison Polesky, and David Force of the Law Offices of Michael Lupolover, 120 Sylvan Avenue, Suite 300, Englewood Cliffs, NJ 07632. Defendant is represented by Robert L. Arleo, 380 Lexington Avenue, 17th Floor, New York, NY 10168.